**No. 52079.**—H. S. Dorf & Co. of Pa., Inc. *v.* United States, petition 6577–R (Philadelphia).

OLIVER, Presiding Judge: This petition is for the remission of additional duties assessed under the provisions of section 489 of the Tariff Act of 1930 by reason of the undervaluation on entry of 100 bags of Spanish briarwood imported from Spain and entered at the port of Philadelphia.

The merchandise was ordered by Henry Leonard & Thomas, Inc., of Ozone Park, N. Y., at $105 per bag on October 4, 1944, exported on December 20, 1944, and entered on February 1, 1945 (R. 12) by H. S. Dorf & Company of Pa., Inc., customs brokers. The petitioner herein made entry in its own name, no owner's declaration having been filed, which, under the provisions of section 485 (d) of the Tariff Act of 1930, would have relieved it from liability for payment of additional duties. It, therefore, was the importer of record.

The record shows that a subsequent order was placed with the same exporter by Henry Leonard & Thomas, Inc., on December 5, 1944, for the same kind of merchandise at $110 per bag. This merchandise was exported from Spain on March 10, 1945, and entry was made at the port of Philadelphia on April 17, 1945, by another firm of customs brokers, F. B. Vandegrift & Co., for the account of the ultimate consignee.

Mr. Francks, called as a witness by the petitioner, testified that he has been an examiner of merchandise at the port of Philadelphia for 26 years; that the imported merchandise consisted of 100 bags of briarwood blocks invoiced and entered at $105 per bag, and finally appraised on April 8, 1945, at $110 per bag (R. 5), which resulted in increased and additional duties. The witness stated that a request for information was submitted to him by the petitioner a few days prior to entry and that at that time he did not have any information respecting any values higher than the $105 in the invoice (R. 6); that as a Government official he had business with the petitioner for a number of years and that he regarded them as being a reputable firm of brokers (R. 7); that the first knowledge he had of a dutiable value higher than the price stated on the consular invoice, to wit, $105 per bag, was from information received from the Customs Information Exchange; that a subsequent order had been placed at a higher price prior to the date of exportation of the merchandise at bar (R. 8).

The Government offered in evidence a so-called submission sheet (exhibit 1) upon which the notation "No further information" was made by the examiner and in which in a column headed "Subsequent Order Placed and Expected Delivery" no statement was made by the importer or broker. The submission sheet was submitted to the examiner by the broker's representative and no information was given by the petitioner or its representative as to any subsequent orders (R. 9, 10).

Bernard F. Liberati testified that he was employed as a clerk by the petitioning company from September of 1941 but was away in the Army from March 1943 to January 1946 (R. 15). There were introduced in evidence letters taken from petitioner's files (collective exhibit 2) which indicate that on January 20, 1945, the petitioner wrote to the ultimate consignee advising it as to the shipment of the 100 bags in question and requested permission to clear the shipment through customs, and that 3 days later the necessary documents were sent by the importer to the brokerage firm. The witness then testified that on January 25 petitioner wrote to the importer requesting information respecting the different quantities and grades of the briarwood in question and again on January 29 advised the importer of the arrival of the steamer, to which the importer replied on January 30 sending a check for the amount of the duty invoiced (R. 16). The witness

further stated that the first time he learned of an advance in value of the merchandise was after the entry was liquidated on July 30, 1946 (R. 17), and that he subsequently visited the examiner to inquire the reason for the advance and was then informed about the second entry. The witness, however, stated he did not have anything to do with the entry in this case on February 1, 1945 (R. 19), and further stated that there is no record in the files to show that at or about the time of the entry in question anyone in the petitioner's firm inquired from the ultimate consignee as to whether or not it had any information as to any other value than that stated on the invoice (R. 20).

The petitioner introduced the testimony of Frances Sherman who stated that she had been employed as a clerk by the petitioning company since March 1943 and that at the time the entry was made she was assistant to Mr. May, since deceased, the employee who was in charge of making entries. The witness stated that she recalled a telephone inquiry made by Mr. May in the early part of 1945 to a Mr. Jacoby, an import agent who arranged for the purchase of the goods, asking for values but did not know of her own knowledge whether he had received any information as to the second order (R. 23).

Anthony J. Berodyn, treasurer of Henry Leonard & Thomas, Inc., the ultimate consignee, who had charge of general purchases for the company, stated that the instant purchase was the first one imported by his firm. A copy of the contract relating to this particular shipment, dated October 4, 1944, accompanied by a letter from Mr. Jacoby, the import agent, was received in evidence as collective exhibit 3 (R. 28), together with correspondence with H. S. Dorf & Co. of Pa., Inc., concerning the importation (collective exhibit 4) (R. 29). The contract was for the purchase of 100 bags of briarwood blocks at $105 per bag. Another contract dated December 5, 1944, for the purchase of 50 bags of briarwood at $110 per bag, which the witness entered into with Mr. Jacoby, was received in evidence (collective exhibit 5) (R. 30). Entry of the second importation was made through Penson & Company, New York brokers, by F. B. Vandegrift & Company at Philadelphia. The witness stated that prior to the date of this particular entry, he was not requested or advised by Dorf & Co., or by his agent, or by any Government official, about the effect of the higher price which he paid under the second contract (R. 31). When queried concerning his understanding about the proper value of the merchandise which he purchased under the first contract, the witness stated he understood that the purchase price, or the contract price, would be the price that the duty would be paid on and that this was his first experience with this type of case (R. 33). The record discloses a letter from Dorf & Co., dated April 1945, to the ultimate consignee, enclosing the official notice of appraisement of the instant merchandise indicating an advance in value. The witness further testified that he first learned that his company would have to pay additional duty in August 1946, by correspondence from H. S. Dorf & Co., and that it then paid the additional duty (R. 34). The witness further stated that he did not inform the petitioner herein about the second contract which was signed prior to the date of entry of the first shipment (R. 37), although he knew that contract called for a higher purchase price than the previous price (R. 48).

The witness then testified that he did not know that Dorf & Co. had presented to the examiner a submittal sheet (R. 40) in connection with the involved merchandise upon which there was a heading "Subsequent Order Placed and Expected Delivery" (R. 41); that he did not know the date when the entry was made but assumed that the company's agents made the entry (R. 46).

On cross-examination, the witness testified that Dorf & Co. was suggested to his firm for employment as broker by Mr. Jacoby, at whose suggestion he had sent the invoice to Dorf & Co. instructing them to make entry (R. 47). The witness admitted that on December 4, 1944, when the second contract was signed,

he knew that there had been a purchase of the same class of merchandise as in the first entry at a higher price and that the second contract was signed prior to the time that the entry was made in the first contract (R. 48).

Albert Jacoby, an import agent since 1939 in New York City, who had arranged for the purchase of both shipments herein, testified that at no time prior to February 1, 1945, the date of entry of the instant merchandise, had he informed the petitioner about the second importation or contract at the higher price of $110 per bag, and that he had not at any time advised and instructed the ultimate consignee, Henry Leonard & Thomas, Inc., to tell the customs officials or the customs brokers about the higher price which they paid under the second contract (R. 49). On cross-examination, this witness stated that he "may have" recommended Dorf & Co. as brokers (R. 52), and on being asked why he did not make the second entry through the same brokers, stated that "Penson & Company were recommended to me and I had heard of them, and so I recommended them." (R. 53.) As to whether he did convey any information to Dorf & Co. about the instant shipment, the witness stated that he did not recall what the telephone conversation he had with Mr. May of Dorf & Co., previously referred to, was about (R. 54), but that he was handling other matters for the petitioner and the telephone conversation may have been on a different subject (R. 54). He further testified that he was familiar with the proper procedure in connection with making entries (R. 58).

In *National Carloading Corp. et al.* v. *United States,* 16 Cust. Ct. 138, C. D. 1001, this court was concerned with a somewhat similar situation wherein entries were filed in the name of the customs brokers and no owners' declarations were obtained from the ultimate consignee. It was there held that the customs brokers, as nominal consignees, were the owners and principals for tariff purposes and not the agents of the owner. The court there stated that it was not concerned with the attitude of the actual consignee for the reason that the latter was not one of the petitioners before the court and, as such, not primarily responsible for payment of additional duties for undervaluation.

It is to be observed that the petitioner made entry of the first shipment on February 1, 1945, and that on April 9, 1945, two months later, the petitioner wrote to the ultimate consignee that it had learned of this second importation, inquiring whether the petitioner could handle that entry. It was not until then that the petitioner learned that Penson & Company was handling the second entry. The employee who was in charge of the entry before us is deceased and there is nothing in the record to show that the petitioning corporation received any information as to the value of the second order prior to its making entry of the first shipment. The record further shows that the petitioner did not learn of an advance in value until after the entry was liquidated on July 30, 1946. Whether or not Jacoby, the agent of the importing firm, was put on notice, after his talk with May, that there was some question of values has not been conclusively shown. The petitioner, however, neither knew, nor was it informed by the ultimate consignee about the second contract which had been signed prior to the date of entry of the first shipment (R. 37). The treasurer of the importing firm stated that his understanding of the proper value of the merchandise under the first contract was the price on which the duty was paid (R. 33). The petitioner made an advance request for information to the appraising officer who testified that he had no knowledge of any higher value. In view of the reputation of the customs brokerage firm, as to which the examiner testified, it would seem that if it had any doubt as to the value after such inquiry, it would have made further inquiries.

On the record as thus made we are of the opinion that there were no facts or circumstances known to the petitioning corporation when it made the instant entry which would cause it to question the correctness of the values given by it,

and that it gave to the appraising officer all the information in its possession at the time of entry as to the dutiable value of the merchandise. We are further of the opinion that there was no intent to defraud the Government of the United States or to deceive its officials and that the petitioner acted in good faith.

The petition is therefore granted.